IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD BRENT THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>F. HOLMES, et al.,<br><br>Defendants. | No. 2:18-CV-1711-DAD-DMC-P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgment, ECF No. 75. Plaintiff has filed an opposition, ECF No. 77. Defendants have filed a reply, ECF No. 78.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the

moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I.  BACKGROUND

### A.  Plaintiff's Allegations

This action proceeds on Plaintiff's first amended complaint. See ECF No. 13. Plaintiff named the following as defendants: (1) J. Walters, a Correctional Sergeant; (2) R. Santisteban, a Correctional Officer; (3) C. Szmanski, a Correctional Officer; (4) D. English, a Correctional Officer; (5) F. Holmes, a Correctional Officer; (6) N. Rushing, a Correctional Officer; (7) L. Saeteurn, a Correctional Officer; (8) A. Tran, a Correctional Officer; (9) Price, a nurse; (10) C. Halloran, a residential nurse; (11) Escobar, a residential nurse; (12) Barba, a residential nurse; (13) T. Miller, a Correctional Officer; (14) M. Miranda, a Correctional Officer; (15) A. Tong; and (16) S. De Jesus. See id. Defendants Pedroza, Maan, and Hong, who were named in the original complaint, were not named in the first amended complaint and have been terminated as defendants to this action. See ECF No. 14, n.1.

Plaintiff alleges that he suffered mistreatment by employees at the California Health Care Facility (CHCF) in Stockton, California. See ECF No. 13. Plaintiff alleges that, on November 12, 2017, he went to E-yard and suffered a seizure. Plaintiff claims several officers were standing around him when he awoke. E-yard nurses responded to Plaintiff's situation, and he refused medical treatment. See id. at 5. Sergeant Walters intervened and directed two officers to push Plaintiff back to D-yard. See id. at 5-6. Plaintiff claims he had a second seizure, and an unidentified nurse exclaimed that it was time to take Plaintiff's blood. See id. at 6. Plaintiff refused, and allegedly an altercation ensued. See id. Defendants Walters, Holmes, Santisteban,

Szmanski, English, Rushing, Tran, and Saeturn then purportedly attacked Plaintiff and forced him to the ground to have his blood drawn. See id.

### B. Procedural History

On July 1, 2019, the Court found that Plaintiff's first amended complaint raised three claims. See ECF No. 14. Specifically, the Court stated:

> Plaintiff raises three claims: (1) Defendants Jane Doe 1, Jane Doe 2, Walters, Holmes, Santisteban, Szmanski, English, Rushing, Tran, and Saeteurn violated Plaintiff's Eighth and Fourteenth Amendment rights by forcibly taking his blood and beating him; (2) Defendants Walters, Halloran, Escobar, Barba, Miller, Miranda, Tong, and De Jesus violated Plaintiff First Amendment rights by retaliating against him for filing CDCR grievances; and (3) Defendant Price violated Plaintiff Fourteenth Amendment equal protection right by discriminating against him on the basis of his race when Price used racial slurs against Plaintiff and asked "why don't you just die."

ECF No. 14, pg. 2.

Following submission of documents for service by the United States Marshal, summons was returned unexecuted as to Defendant Price on December 19, 2019. See ECF No. 23. On December 30, 2019, Defendants Barba, De Jesus, Miranda, English, Halloran, Rushing, Escobar, Walters, Tong, Tran, Miller, Holmes, and Saeteurn filed a motion to dismiss. See ECF No. 27. Defendants Szmanski joined in the motion on January 24, 2020. See ECF No. 32. On September 14, 2020, following completion of briefing, the Court issued findings and recommendations that Defendants' motion to dismiss be denied. See ECF No. 36. The findings and recommendations were adopted in full by the District Judge on April 2, 2021. See ECF No. 41. Defendants filed their answer on April 21, 2021. See ECF No. 42.

On June 15, 2021, Defendants filed a motion for partial summary judgment. See ECF No. 45. On January 10, 2022, the Court issued findings and recommendations that the motion for partial summary judgment be granted and that Defendants Walters, Santisteban, Szmanski, English, Rushing, Saeteurn, Tran, Miller, Miranda, Tong, and De Jesus be dismissed. See ECF No. 53. The Court also recommended that Defendant Price be dismissed for failure to effect service of process. See id. The Court recommended that this action proceed on Plaintiff's claims against Defendants Holmes, Halloran, and Barba only. See id. The findings and

recommendations were adopted in full by the District Judge on March 9, 2022.

## II.  THE PARTIES' EVIDENCE

### A.  Defendants' Evidence

Defendants' motion for summary judgment is supported by points and authorities, ECF No. 75-1, a statement of undisputed facts (DUF), ECF No. 75-2, the declarations of Defendant Halloran, ECF No. 75-3, Defendant Holmes, ECF No. 75-4, Defendant Barba, ECF No. 75-5, as well as the declaration of defense counsel David Kuchinsky, Esq., and attached Exhibit A, ECF No. 75-6.  Defendants have also lodged with the Court the certified transcript of Plaintiff's October 5, 2022, deposition.  See ECF No. 76.

In Defendants' statement of undisputed facts, nos. 1 through 8, Defendants summarize the allegations in Plaintiff's first amended complaint.  See ECF No. 75-2, pgs. 1-2.

Defendants state that the following facts are undisputed with respect to Plaintiff's claim that Defendant Holmes used excessive force:

> 9.  On November 12, 2017, Plaintiff had seizure-like symptoms, prompting a code-1 alarm, but then refused to let medical staff take his blood. (Holmes Decl. ¶ 3; Thomas Dep. 32:15-34:8.)
>
> 10.  At approximately 9:24 a.m., Defendant Holmes responded to the code-1 alarm in the E Facility work change area and saw Plaintiff lying on the ground while custody staff issued several orders to Plaintiff to stop resisting and tried to hold him, but Plaintiff was still pulling away and thrashing his arms around. (Holmes Decl. ¶ 3; Thomas Dep. 35:6-24.)
>
> 11.  Holmes took hold of Plaintiff's left leg with both hands and held it down until another officer brought Holmes a pair of leg restraints, which Holmes placed on Plaintiff's legs. (Holmes Decl. ¶ 4; Thomas Dep. 39:16-18.)
>
> 12.  Plaintiff stopped resisting and Holmes released his hold on Plaintiff's legs, at which point non-party staff members escorted Plaintiff away from the scene and Holmes had no further contact with Plaintiff. (Holmes Decl. ¶ 4; Thomas Dep. 45:15-46:1.)
>
> 13.  Plaintiff does not know what Holmes looks like, does not know who Holmes is, had never met Holmes before November 12, 2017, and cannot identify Holmes to this day. (Holmes Decl. ¶ 2; Thomas Dep. 20:7-5, 79:15-80:14.)

///

14. Plaintiff does not know what Holmes was doing during the November 12, 2017, incident, does not know whether Holmes hit him on November 12, 2017, and does not know whether Holmes did anything on November 12, 2017, except for putting restraints on Plaintiff's legs. (Thomas Dep. 38:12-14; 45:15-46:1; 79:15-80:14.)

15. On November 12, 2017, Holmes did not attack, assault, beat, or take Plaintiff to the ground, did not witness anyone attack, assault, beat, or take Plaintiff to the ground, did not see any staff member drag Plaintiff or beat him inside of the work exchange building, and did not hear non-party sergeant Walters tell Plaintiff, "I'm going to stop you coming to E-yard," tell any staff members to "beat him down," or say, "I'm not finished, drag him away from the camera into work exchange." (Holmes Decl. ¶¶ 5-6; Thomas Dep. 38:12-14; 45:15-46:1; 79:15-80:14.)

ECF No. 75-2, pgs. 2-3.

With respect to Plaintiff's retaliation claim against Defendants Halloran and Barba, Defendants assert that the following facts are undisputed:

16. On November 24, 2017, neither Defendant Halloran or Barba was aware of any grievance that Plaintiff had submitted relating to the November 12, 2017, incident, had not spoken to non-party staff member Walters about any grievance Plaintiff had filed, and had never intended to retaliate against Plaintiff for filing grievances or for any protected conduct. (Halloran Decl. ¶¶ 10, 20; Barba Decl. ¶¶ 3, 14; Thomas Dep. 85:20-23, 87:1-88:7.)

17. On November 24, 2017, at approximately 9:05 a.m., Defendants Halloran and Barba responded to a medical emergency call in Facility E, saw Plaintiff slumped down in his wheelchair, and attempted to provide medical care and transport Plaintiff to the Standby Emergency Medical Services (SEMS) unit for evaluation, but Plaintiff refused, so Halloran and Barba left the area. (Halloran Decl. 12; Barba Decl. ¶ 6; Thomas Dep. 92:3-8, 92:17-94:21.)

18. Twenty minutes later, at approximately 9:25 a.m., Halloran and Barba again responded to a medical emergency call in Facility E, once again saw Plaintiff slumped him his wheelchair and attempted to transport Plaintiff to SEMS, but Plaintiff again refused. (Halloran Decl. ¶ 13; Barba Decl. ¶ 7; Thomas Dep. 95:2-4)

19. After refusing for the second time, Plaintiff began flailing his arms and legs wildly, then stopped and slowly guided himself to the ground, sat up, but refused for the third time to be transported to SEMS. (Halloran Decl. ¶ 8; Barba Decl. ¶ 14; Thomas Dep. 95:14-24.)

20. Plaintiff has no memory of what happened on November 24, 2017, but knows that he would have refused to go to SEMS. (Thomas Dep. 95:21-24; 102:5-23.)

///

6

21. Plaintiff's refusal to receive medical treatment or be transported to SEMS caused a substantial delay in programming and medical treatment on the yard for more than forty minutes, with several urgent inmate medical appointments having to be rescheduled, so Halloran issued Plaintiff a rules violation report because Plaintiff's actions disrupted facility operations. (Halloran Decl. ¶ 15-18 & Ex. A; Barba Decl. ¶¶ 11-12; Thomas Dep. 99:3-102:1.)

22. Issuing the rules violation reasonably advanced the legitimate correctional goal of maintaining order in the prison by ensuring that programming and facility operations are not disrupted by inmate behavior, as well as documenting instances of Plaintiff's conduct that caused delays so that staff could be aware of the incident in future encounters. (Halloran Decl. ¶ 19; Barba Decl. ¶ 13.)

ECF No. 75-2, pgs. 3-4.

**B.    Plaintiff's Opposition**

Plaintiff's opposition is supported by a statement in response to Defendants' separate statement of undisputed facts, ECF No. 77, pgs. 1-11, Points and authorities to oppose summary judgment, ECF No. 77, pgs. 14-16, and declaration of Plaintiff in support of Plaintiff's opposition to the Defendants' motion for summary judgment, ECF No. 77, pgs. 18-20.

In his statement in response to Defendant's separate statement of undisputed facts, Plaintiff largely admits to the undisputed facts submitted by Defendants. Plaintiff, however, disputed the following regarding the events on November 12, 2017: (1) Plaintiff denies that Defendant Holmes was the officer who placed restraints on Plaintiff, stating "I don't know who put the restraints on Plaintiff," see ECF No. 77, pgs. 1, 6 and (2) Plaintiff denies that Defendant Holmes did not attack Plaintiff or take him to the ground, nor did Holmes witness anyone assault the Plaintiff. see id. at 8.

Plaintiff disputed the following related to the events on November 24, 2017: (1) Plaintiff denies that Defendants Halloran and Barba were not aware of the grievance Plaintiff submitted relating to November 12, 2017, see id.; (2) Plaintiff denies that the rule violation report was never intended to be a retaliatory action against Plaintiff for filing a grievance, see id.; and (3) Plaintiff denies that the rules violation reasonably advanced the legitimate correctional goal of maintaining order in the prison by ensuring programs and facility operations are not disrupted by inmate behavior, see id. at 11.

7

1   Finally, Plaintiff attaches five exhibits, two of which are marked as Exhibit A

2  (referenced here as Exhibit A1 and Exhibit A2), to his opposition filing. See ECF No. 77, pgs.

3  27-73.   Exhibits A through … See ECF No. 77. These exhibits are summarized below:

| | | |
|---|---|---|
| 4 | Exhibit A1 | Plaintiff attaches the institutional response to Plaintiff from California Correctional Health Care Services regarding Plaintiffs CDCR 602 HC, health care grievance received on December 29, 2017. With Exhibit A1 is Plaintiff's initial grievance submitted by Plaintiff. See ECF No. 77, pgs. 28-34. |
| 7 | Exhibit A2 | Plaintiff attaches a Rules Violation Report concerning a rules violation occurring on November 24, 2017.  Plaintiff was charged with faking seizures thereby causing a medical emergency, and then refusing treatment.  Plaintiff was found not guilty of a rules violation. See ECF No. 77, pgs. 36-52. |
| 10 | Exhibit B | Plaintiff provides a December 6, 2017, memorandum response to Plaintiff's staff complaint concerning events of November 12, 2017.  Included with Exhibit B is Plaintiff's November 14, 2017, CDCR Form 602 inmate grievance concerning November 12, 2017. See ECF No. 77, pgs. 54-59. |
| 13 | Exhibit C | Plaintiff provides Interdisciplinary Progress Notes dated December 23, 2015, December 28, 2015, January 6, 2016, January 11, 2016, February 16, 2016, and February 22, 2016, all signed by J. Fick, Ph.D. and indicating a diagnosis of schizoaffective disorder, bipolar type. See ECF No. 77, pgs. 61-66. |
| 17 | Exhibit D | Plaintiff submits Informational Chronos dates September 6, 2018, September 7, 2018, September 12, 2018, September 13, 2018, and September 14, 2018, all signed by Correctional Officer A. Tong and relating to various apparent medical emergencies where Plaintiff refused treatment. See ECF No. 77, pgs. 68-73. |

### III. DISUCSSION

In their motion for summary judgment, Defendants argue: (1) there is no evidence Defendant Holmes used excessive force; and (2) there is no evidence that Defendants Halloran or Barba issued a rules violation report in retaliation for Plaintiff's protected conduct or that the rules violation report did not serve a legitimate penological interest. See ECF No. 75-1.

/ / /

/ / /

/ / /

8

A. **Excessive Force Claim – Defendant Holmes**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the Court must be deferential to the conduct of prison officials.  See Whitley, 475 U.S. at 321-22.

        Defendants argue that Plaintiff cannot prevail on his excessive force claim because he testified at his deposition that he has no memory of Defendant Holmes ever hitting him, that he does not know what Defendant Holmes looks like, and that Plaintiff cannot identify Defendant Holmes.  See ECF No. 75-1, pgs. 6-9.  Defendants point to the following portions of Plaintiff's deposition testimony concerning the events of November 12, 2017:

> Q: Are you able to say one way or the other whether Holmes hit you that day?
>
> A: I'm not sure. I'm not able to say.
>
>         \* \* \*
>
> Q: Throughout the attack, you sort of pointed to two different attacks. One where they attacked you on the ground and one where they moved you to another location. Are you able to say with any certainty what Officer Holmes did throughout that time?
>
> A: I don't know who Officer Holmes is. I don't even know what he looked like, so I can't say, you know, if he did anything or not.
>
> Q: Okay. No memory or recollection one way or the other?
>
> A: No, because I don't know – I don't know who Holmes is.
>
>         \* \* \*
>
> Q: Do you have a specific memory of who was beating you inside work exchange?
>
> A: The officers that brought me in there. That was it.
>
> Q: Okay. Okay. And you can't identify any of them as Holmes, right?
>
> A: I can't identify none of them as Holmes. I don't even know who Holmes is.
>
> Q: Got it. Okay.
>
> A: But –
>
> Q: Sorry. Go ahead.

      A: But Holmes said he just put the shackles on my feet.

      Q: Okay. Do you think that is accurate, that he just put shackles on your feet and didn't do anything else?

      A: I don't know.

      Q: You can't say one way or another, right?

      A: Yeah, because I don't know who he is.

      Q: Got it. All right. And even after seeing the video, you can't identify Holmes, right? There is no one on it that you know is Holmes or anything?

      A: No. I cannot identify. Only one I can identify is Sergeant Walters.

ECF No. 75-1, pgs. 7-8.

Based on this testimony, Defendants argue:

> Plaintiff's deposition testimony makes clear that he can offer no admissible evidence to show that Holmes assaulted him. Plaintiff admitted that he could not say what Holmes did, and his reliance on Holmes's own statements that Holmes was there on November 12, 2017, makes clear that he has no personal knowledge of any of the actions of Holmes on that day. Plaintiff's own testimony also indicates that when he has these psychogenic seizures, he has no memory of the events during the seizure. Plaintiff's claim that Holmes assaulted him amounts to nothing more than unsupported speculation. He must offer more than conclusory statements to survive summary judgment, but his deposition testimony makes clear that he cannot do so.
>
> Because Plaintiff has no personal knowledge or evidence of what Holmes did that day, it is undisputed that Holmes did not use excessive force against Plaintiff. Holmes responded to a code-1 alarm and saw Plaintiff lying on the ground while custody staff were trying to hold him down. (DUF ¶ 10.) Staff were issuing multiple orders to stop resisting, but Plaintiff refused to comply. (*Id.*) Holmes took hold of Plaintiff's legs and secured them in restraints, holding only until Plaintiff stopped resisting, and then releasing his hold. (DUF ¶¶ 11-12.) Once Plaintiff stopped resisting, he was escorted away from the scene, and Holmes had no other involvement. (DUF ¶ 12.)
>
> The undisputed evidence makes clear that Holmes only used force in a good faith effort to regain control of Plaintiff, and stopped using force as soon as Plaintiff was compliant. There is no evidence that Holmes used force maliciously or sadistically to cause Plaintiff harm. Holmes did not assault Plaintiff, nor did Holmes see anyone else assault Plaintiff on November 12, 2017. (DUF ¶ 15.)

///

///

///

11

> Plaintiff's speculation and admitted lack of knowledge about what, if anything, Holmes did on November 12, 2017, cannot demonstrate a genuine dispute of fact. Accordingly, Holmes is entitled to judgment as a matter of law and the Court should dismiss Plaintiff's claims with prejudice.

ECF No. 75-1, pgs. 8-9.

Although Plaintiff maintains that Holmes assaulted him on November 12, 2017, Plaintiff does not provide any evidence to call his own deposition testimony into question. See ECF No. 77.

The Court finds that Defendants have met their initial burden on summary judgment of demonstrating the force used by Holmes was applied in a good-faith effort to maintain or restore discipline. Further, the undisputed evidence, specifically Plaintiff's own deposition testimony, reflects that Plaintiff cannot present facts to show that Defendants Holmes used excessive force. The burden therefore shifts to Plaintiff to provide sufficient evidence to put this version of events in dispute. Plaintiff states in his opposition that he does not know who put restraints on his legs. Plaintiff thus cannot meet his burden and Defendants are entitled to judgment in their favor as a matter of law on Plaintiff's excessive force claim.

      **B.**      **Retaliation Claim – Defendants Halloran and Barba**

In order to prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to prevail on a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the

inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element.

Defendants argue: (1) the rules violation report was not issued because Plaintiff submitted a grievance; and (2) Defendants' conduct advanced a legitimate penological interest. See ECF No. 75-1, pgs. 11-12.

Plaintiff claims Defendants Halloran and Barba issued a rules violation report in retaliation for Plaintiff having filed an inmate grievance. The Court agrees with Defendants that Plaintiff cannot prevail because the undisputed evidence shows that neither defendant was aware of Plaintiff's grievance at the time they wrote the rules violation report. In his declaration, Defendant Halloran states that he was not aware at the time he wrote the rules violation report on November 24, 2017, that Plaintiff had filed a grievance. See ECF No. 75-3, ¶ 10. Defendant Halloran further states that he has never reviewed Plaintiff's grievance history and never spoke with Sergeant Walters about any of Plaintiff's grievances. See id. Similarly, Defendant Barba states in his declaration that he was unaware at the time he wrote the rules violation report on November 24, 2017, of any grievances having been filed by Plaintiff. See ECF No. 75-5, ¶ 14. Defendant Barba also states that he never spoke with Sergeant Walters about Plaintiff's

grievances.  See id.

The Court finds that Defendants' declarations satisfy their initial summary judgment burden of identifying the lack of a genuine dispute of material fact as to whether there is a but-for causal connection between Plaintiff's protected activity and issuance of the rules violation report.  Defendants' evidence shows that there is no such causal connection.  Plaintiff has not offered any evidence to suggest otherwise.  For this reason alone, Defendants are entitled to judgment in their favor as a matter of law on Plaintiff's retaliation claim.  See Hartmann v. Moore, 547 U.S. 250, 260 (2006) (requiring but-for causation to sustain a retaliation claim).

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment, ECF No. 75, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 7, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE